RICK S. COWLE, ESQ.
THE LAW OFFICE OF RICK S. COWLE
*Attorney for the Debtor*
18 Fair Street
Carmel, NY 10512
(845) 225-3026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    MICHAEL J GRIFFIN AND
    JANET L GRIFFIN,

                 Debtors.

Chapter 13

Case No. 16-10202-1

## APPLICATION IN SUPPORT OF MOTION FOR CONTEMPT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 9014 AND 9020

Rick S. Cowle, Esq., an attorney duly admitted to practice law in the state of New York, State of Connecticut, United States Supreme Court, District of Columbia and Federal District Court in the Northern, Eastern and Southern Districts of New York, on behalf of the Debtors, Michael J Griffin and Janet L Griffin, respectfully represents:

1. I am the owner of the Law Office of Rick S. Cowle, 18 Fair Street, Carmel, New York 10512 and the attorney for the above-captioned Debtors, Michael J Griffin and Janet L Griffin (the "Debtors"). This application is made in support of the within motion to determine whether creditors Ulster Savings Bank ("Ulster") and McCormick 105 LLC ("McCormick") and its servicer BSI Financial Services, Inc. ("BSI") (collectively "Creditors"), are in contempt of court under 11 U.S.C. § 105(a) and Bankruptcy Rule 9020 for violating the automatic stay as well as their violations of this Court's the Stipulation and Order Authorizing Parties to Enter Into Loan Modification and Directing Treatment of Mortgage Claim and what remedies are to be

ordered by this Court including, but not limited to, actual damages, punitive damages, treble damages, and costs.

## FACTUAL HISTORY

2. On February 15, 2016, Michael J Griffin and Janet L Griffin ("Debtors") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Petition") in the Northern District of New York, Albany Division.

3. The Debtors own and reside at the property commonly known as 2 Cortland Lane, Marlboro, NY 12542 ("Property"), which is their principal residence.

4. At the time of filing, the Property was encumbered by a first mortgage held by Ulster, and Ulster was foreclosing on its mortgage in the NYS Supreme Court, Ulster County, under index no. 13-3797 ("Foreclosure Action").

5. The Debtors listed Ulster in their bankruptcy schedules and added its foreclosure counsel Schiller, Knapp Lefkowitz & Hertzel to receive additional notice of the bankruptcy filing.

6. On February 16, 2016, the Debtors filed a Loss Mitigation Request with Ulster with the Order Granting Request for Loss Mitigation being entered on March 8, 2016.. (ECF Nos. 7 & 19 respectively).

7. On June 1, 2016, creditors McCormick and its servicer BSI filed a Transfer of Claim form transferring Ulster's interest in the subject mortgage (ECF no. 39) to BSI as servicer for McCormick and loss mitigation continued between the Debtor BSI as servicer for McCormick

8. On or about October 1, 2016, McCormick offered the Debtors a Loan Modification Agreement (the "Modification Agreement") and the Debtors executed the

Modification on October 20, 2016. *See* Modification Agreement attached hereto and made apart hereof as Exhibit A.

9. On October 27, 2016, the Stipulation and Order Authorizing Parties to Enter Into Loan Modification and Directing Treatment of Mortgage Claim was entered by Hon. Robert E. Littlefield Jr. (the "Modification Order"). *See* Stipulation and Order attached hereto and made apart hereof as Exhibit B.

10. Pursuant to the Modification Order, the parties were authorized to execute and record the Modification Agreement and the Creditors' proof of claim no. 1 was deemed modified to reflect mortgage arrears of $0.00. *See* Exhibit B.

11. Under the Modification Agreement, the first mortgage payment under said modification would be November 1, 2016 in the amount of $3,241.56. The Debtor made that first mortgage and has timely made every mortgage payment since that time until the present. Further a Notice of Mortgage Payment Change was filed on ECF on July 6, 2017 whereby the payment was decreased starting August 01, 2017 due to a change in the escrow payment to $3,104.13. *See* Debtor's Payments to the Creditors from 2016 - 2019 attached hereto and made apart hereof as Exhibit C; *see also* Notice of Mortgage Payment Change attached hereto and made apart hereof as Exhibit D.

12. Despite the Debtors' compliance with the Modification Agreement, the Debtor received a Notice of Sale of their Property dated May 28, 2019 whereby the Creditors announced that they will sell the Debtors' home at auction on June 28, 2019. *See* Notice of Sale attached hereto and made apart hereof as Exhibit E.

13. The Debtors were shocked to receive this Notice and became extraordinarily distraught that their home was to be auctioned off to the highest bidder in a month even though

they entered into a So Ordered Modification Agreement and they are current on the mortgage.

14.     Despite adequate notice of the Debtors' bankruptcy filing, the Creditors continued its judicial proceeding against the Debtors seeking to obtain possession of property of the estate, and they have violated the automatic stay pursuant to 11 USC §§ 362(a)(1) and (a)(3) and this Court's Modification Order.

## THE CREDITOR VIOLATED THE AUTOMATIC STAY

15.     Upon the filing of his petition, the Debtors were entitled to the protection of the automatic stay under 11 U.S.C. § 362 as the automatic stay is immediately effective upon a bankruptcy petition filing without any additional action. *Rexnord Holdings, Inc. v. Birdermann*, 21 F.3d 522, 527 (2d Cir. 1994).

16.     The overriding purpose of § 362 can be taken directly from the section's legislative history:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 340-41 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see United States v. Colasuonno*, 697 F.3d 164, 172 (2d Cir. 2012).

17.     § 362(a)(1) states in part that a filed bankruptcy petition operates as a stay, applicable to all entities, of the "... continuation, ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

18.     § 362(a)(3) states in part that a filed petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

19.     Under 11 U.S.C. § 541, the act of filing a bankruptcy petition creates an estate containing "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a) brings into the estate all such interests in property, "wherever located and by whomever held." Property of the estate encompasses all rights and interests that a Debtor may have in a property.

20.     During the bankruptcy case, "the automatic stay provisions of section 362 work with sections 541 to shelter the debtor's estate from action by creditors, enabling the debtor to get the relief and fresh start that are among the goals of the bankruptcy regime." *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983).

21.     The Creditors blatantly violated §§ 362(a)(1) and (a)(3) by continuing the Foreclosure Action against the Debtors even though it had ample notice that the Debtors had filed a bankruptcy. In fact, the Creditors were engaged in loss mitigation through the Debtors' bankruptcy and even entered into a Modification Agreement that was so ordered by this Court. Further, the Debtors are current on their mortgage.

22.     "A motion for Stay Relief is not a mere formality that maybe ignored in a party's discretion. Only a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay." *In re Dominguez*, 312 BR 499, 505 (Bankr. S.D.N.Y. 2004); *see In re Siskin*, 258 B.R. 554, 561-62 (Bankr. E.D.N.Y. 2001); accord, *Carr v. McGriff*, 8 A.D.3d 420, 2004 WL 1341842 (App. Div.2d Dep't 2004) (holding that the New York Supreme Court's order issued post-petition violated of the automatic stay and thus was void).

23. "[A Creditor] is required to move for stay relief if it wishes to enforce its rights against debtor protected by the United States Code and the federal bankruptcy law and it cannot bypass this Court's jurisdiction merely because in their opinion cause exists to lift the stay." *In re Dominguez*, 312 BR at 506-07.

24. Further, "[i]t is not the debtor's responsibility to take action that ensure that she receive the protection of the automatic stay; rather the **creditor bears the burden of seeking relief from the automatic stay**…." *In re Braught*, at 401 (Bankr. S.D.N.Y. 2004) (emphasis added.)

25. Here, the Debtors were forced to incur a substantial amount of additional legal fees to merely preserve their rights under the Bankruptcy Code as the Creditors willfully violated the automatic stay. As such, the Creditors must pay damages per § 362(k).

## ACTUAL DAMAGES REQUEST

26. As a result of the Creditors' violation of the automatic stay imposed upon it by §§ 362 (a)(1) and (a)(3) they must pay damages per § 362(k).

27. § 362(k) of the Bankruptcy Code states in part that "an individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

28. "Damages for willful violation of the automatic stay will lie if 'a person takes a deliberate act … in violation of a stay, which the violator knows to be in existence… [s]uch an act need not be performed with specific intent to violate the stay. Rather, so long as the **violator possessed general intent in taking actions which have the effect of violating the automatic stay the intent required by § 362(h) is satisfied.**'" *In re Dominguez*, 312 BR 499, 508 (Bankr.

S.D.N.Y. 2004) quoting *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 349 (Bankr. S.D.N.Y.1998) (emphasis added).

29. Actual damages include reasonable attorney fees for prosecuting a stay violation. *In re Pachman*, 2010 WL 1489914, at *2 (Bankr. S.D.N.Y. Apr. 14, 2010) (citation omitted).

30. Because the Creditors willfully violated section 362(a), they are liable under § 362(k) for Debtors' actual damages, costs, and attorney's fees.

31. As a result of the Creditors' violation, the undersigned was forced to prepare and submit this Motion and to prepare for and attend the hearing scheduled June 27, 2019; however, the Creditors should pay these additional fees rather than the Debtors.

32. The undersigned believes the allowance sought herein for services rendered is fair and reasonable, particularly in view of the complexity of the case and the matters presented herein. The standard fees for the relevant period are three hundred eighty-five dollars ($385.00) per hour for senior-attorney time, and three hundred twenty-five dollars ($325.00) per hour for associate time.

## PUNITIVE DAMAGES REQUEST

**(A) Legal Reasoning Awarding Punitive Damages**

33. Pursuant to § 362(k), "an individual injured by any willful violation of a stay provided by this section … may recover punitive damages."

34. According to *In re Crawford*, it is in the discretion of the bankruptcy court to determine whether punitive damages should be awarded. 388 B.R. 506 (Bankr. S.D.N.Y. 2008).

35. The following factors should be considered by the bankruptcy court when determining whether punitive damages should be awarded: "(1) the nature of the defendant's

conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor." *In re Diviney*, 225 B.R. 762, 777 (B.A.P. 10th Cir. 1998).

36. "[I]f a party charged with violating the stay knows that the stay is in effect, any deliberate act taken in violation of the stay justifies an award of damages." *Ford Motor Credit Co. v. Florio (In re Florio)*, 229 B.R. 606, 608 (S.D.N.Y.1999).

37. In this case, based on the factors laid forth above from *In re Diviney*, punitive damages should be awarded. 225 B.R. at 777.

38. Based on the first factor, punitive damages are appropriate because Creditors' conduct constitutes an intentional and deliberate violation of the automatic stay. The Creditors violated §§ 362(a)(1) and (a)(3) by pursuing the foreclosure action and setting a Foreclosure sale date to auction off the Debtors' home, even though the Debtors are current on their mortgage, without seeking relief from the stay after adequate notice of the bankruptcy.

39. The Creditors showed "callous indifference to bankruptcy law," *In re GGSI Liquidation Inc.*, 355 B.R. at 703, by attempting bypass the bankruptcy court by continuing its Foreclosure Action.

40. As for the second factor, the Creditors are large financial institutions and have the ability to pay punitive damages.

41. The third factor set forth above further suggests that punitive damages should be awarded in this case as the Creditors appears to have ignored applicable bankruptcy law as well as this Court's Modification Order.

42. Based on the foregoing, the award of punitive damages against the Holdover Tenants is necessary to deter such conduct of "'thumb[ing] [their] nose at' the law, the debtor and the court" in the future. *In re Mitchell* 2009 Bankr. LEXIS 105.

**(B) Legal Reasoning Determining Amount of Punitive Damages**

43. "To determine the appropriate amount of punitive damages, the Court must consider the nature of the Respondent's conduct, the ability to pay, and the amount of actual damages awarded. The amount of punitive damages should be sufficient to deter the Respondents, and similarly situated parties in the future, from unilaterally determining the scope and effect of the automatic stay." *In re Gagliardi,* 290 B.R. at 822.

44. Further, "[p]unitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal." *In re Lile*, 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989).

45. Here, as set forth above, the Creditors unilaterally decided to forego the procedures of the Federal Bankruptcy Courts and intentionally continued its Foreclosure Action without court approval while the automatic stay was in place. By continuing the Foreclosure Action in state court after notice of the bankruptcy and after participating in SDNY Bankruptcy Court's Loss Mitigation Program and entering into a Modification Agreement so ordered by this Court, (at which time, the Foreclosure Action should have been discontinued), the Creditors; conduct was both willful and in bad faith.

46. As such, it is requested that the Court award punitive damages accordingly.

## THE CREDITORS VIOLATED THIS COURT'S STIPULATION AND ORDER AUTHORIZING PARTIES TO ENTER INTO LOAN MODIFICATION AND DIRECTING TREATMENT OF MORTGAGE CLAIM

47. As stated above the Debtors and the Creditors entered into the Modification Agreement on or about October 20, 2016. *See* Exhibit A.

48. Further, on October 27, 2016, the Stipulation and Order Authorizing Parties to Enter Into Loan Modification and Directing Treatment of Mortgage Claim was entered by Hon.

Robert E. Littlefield Jr. *See* Exhibit B.

49.     Pursuant to the Modification Order, the parties were authorized to execute and record the Modification Agreement and the Creditors' proof of claim no. 1 was deemed modified to reflect mortgage arrears of $0.00. *Id.*

50.     Further, the Modification Order set forth the terms of the Modification Offer including that the first payment under the Modification Agreement was November 1, 2016 as well as the payment terms. *Id.*

51.     As the Debtors have fully complied with the terms of the Modification Agreement and the Modification Order and are <u>current on their mortgage</u>, the Creditors had no right to blatantly ignore the Modification Agreement and this Court's Order and to institute a foreclosure sale to sell the Debtors' home. *See* Exhibits C and D respectively.

52.     The Second Circuit Court of Appeals has ruled that the purpose of civil contempt is compliance of a court's directive, "[t]he purpose of civil contempt ... is to compel a reluctant party to do what a court requires of him." *Bagley v. Santacroce*, 800 F. 2d 33, 36 (2d. Cir. 1986).

53.     Here, the Creditors should also be held in contempt of court due to their failure to adhere to this Court's Modification Order and the Debtors should be awarded actual and punitive damages.

## CONCLUSION

54.     As a result of the Creditors' shocking violations of the Automatic Stay imposed upon it by § 362, they must pay damages as per § 362(k).

55.     Further, due to the Creditors' intentional and deliberate violation of the Automatic Stay and their utter disregard of the bankruptcy, punitive damages are necessary to deter such conduct in the future.

56.     The Creditors should also be held in contempt of court for their flagrant violations of this Court's Modification Order and should have to pay actual and punitive damages as a result of their callousness.

57.     Moreover, the Creditor should have to undertake any action necessary to have the Foreclosure sale cancelled immediately and the Foreclosure Action discontinued with prejudice and the lis pendens cancelled.

58.     The Debtor has no other adequate remedy at law or in equity.

**WHEREFORE**, the Debtors request that this Court find the Creditors in contempt for its violation of the automatic stay and their violation of this Court's Modification Order pursuant to 11 U.S.C. § 105 and FRBP 9014 and 9020; awarding actual damages and punitive damages to the Debtors and granting to the Debtors such other and further relief as the Court may seem just and proper.

Dated: Carmel, New York
      June 4, 2019

                                THE LAW OFFICE OF RICK S. COWLE

                                By:     /s/Rick S. Cowle
                                        Rick S. Cowle, Esq.
                                        18 Fair Street
                                        Carmel, NY 10512
                                        Tel:    (845) 225-3026
                                        Fax:   (845) 225-3027